UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA             :

   -v.-                                              :          12 Cr. 524 (PGG)

ERIC LESANE,                                      :

                  Defendant.         :

---------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York
                                            One St. Andrew's Plaza
                                            New York, New York 10007

Jessica R. Lonergan
Assistant United States Attorney
- Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 15, 2013

**BY HAND AND ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

   Re: **United States v. Eric Lesane**,
      12 Cr. 524 (PGG)

Dear Judge Gardephe:

  The Government respectfully submits this memorandum in advance of the sentencing of Eric Lesane (the "defendant"), scheduled for Friday, October 18, 2013. For the reasons set forth below, the Government submits that the Court should impose a sentence within the applicable Guidelines range of 100 to 120 months' imprisonment.[1]

## The Guidelines Calculation

### A. Offense Level

  The Government's calculation of the Guidelines in its *Pimentel* letter differs from that set forth in the Presentence Report ("PSR") prepared by United States Probation Office (the "Probation Office"). The criminal history available to the Government at the time that the *Pimentel* letter was written did not contain the defendant's youthful offender adjudications, critically the April 20, 2001 guilty pleas to Attempted Robbery in the Third Degree and Escape in the Second Degree, after which the defendant was adjudicated a youthful offender and sentenced to 16 months' to 4 years' imprisonment (PSR ¶¶ 38-42.) These youthful offender adjudications affect the calculation of the base offense level. Because the defendant committed the instant offense after two felony convictions of a crime of violence, rather than one, the base

---

[1] As is discussed further below, this Guidelines range is neither the range in the Government's *Pimentel* letter nor the range calculated by the United States Probation Office (the "Probation Office") in the Presentence Investigation Report ("PSR").

offense level increases from 20 to 24. U.S.S.G. § 2K2.1. This results in a total offense level of 25. (PSR ¶ 25.)

### B. Offense Level

In its *Pimentel* letter, the Government calculated that the defendant had seven criminal history points, placing him in Criminal History Category IV. The youthful offender adjudications discussed above, however, change this calculation.

The Probation Office assessed the defendant three criminal history points for each of these youthful offender adjudications, raising his Criminal History Category from IV to VI. (PSR ¶¶ 38-42, 57-58.) *See* U.S.S.G. § 4A1.2(d)(1). Because, however, the offenses were not separated by an intervening arrest and the sentences were imposed on the same day, the sentences should not be counted separately. U.S.S.G. § 4A1.2(a)(2). This results in three additional criminal history points, rather than six, placing the defendant in Criminal History Category V.

### C. The Defendant's Youthful Offender Adjudications Count Towards Both His Offense Level and His Criminal History

In the defendant's Sentencing Memorandum ("Def. Mem."), the defendant's calculates an offense level of 23 and a Criminal History Category of III, resulting in a Guidelines range of 46 to 57 months' imprisonment. (Def. Mem. 4.) To arrive at this range, the defendant argues that his youthful offender adjudications should not count as prior felony convictions in calculating either his offense level or his Criminal History Category. (Def. Mem. 4.) *See* U.S.S.G. §§ 2K2.1, Application Note 1; 4A1.2(d). Specifically, Application Note 1 to Section 2K2.1 defines a felony conviction as a "prior adult … conviction," and clarifies that "[a] conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." Section 4A1.2(d) provides that "[i]f a defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points."

Following the two convictions at issue, the defendant was adjudicated a "youthful offender." The Second Circuit has made clear, however, that the *ex post* designation of a conviction as a "youthful offender adjudication" under New York law is not the controlling factor in determining whether such convictions should be counted as adult convictions. *United States* v. *Cuello*, 357 F.3d 162, 168 (2d Cir. 2004). Rather, the court held that that "determining whether a New York youthful offender adjudication is classified as an adult conviction under the laws of New York for the purpose of U.S.S.G. § 2K2.1 requires district courts to examine the substance of the prior conviction at issue; to focus on the nature of the proceedings, the sentences received, and the actual time served." *Id.* at 168-69 (internal quotation marks, alterations, and citations omitted). The same holds true for whether youthful offender adjudications receive

Hon. Paul G. Gardephe
October 15, 2013
Page 3

criminal history points under U.S.S.G. §§ 4A1.1 and 4A1.2(d). *Id.* at 167-68 (citing *United States* v. *Driskell*, 277 F.3d 150, 156-57 (2d Cir. 2002)).

In the instant case, the two youthful offender adjudications at issue occurred in Bronx County Supreme Court, an adult forum, and the sentence was imposed to run concurrently with the defendant's conviction for Robbery in the Third Degree, which was not classified as a youthful offender adjudication. (PSR ¶¶ 34, 42.) Thus, under *Cuello*, the defendant's youthful offender adjudications qualify as adult convictions for purposes of calculating both the offense level and the defendant's Criminal History Category.

Accordingly, with an offense level of 25 and Criminal History Category of V, the defendant's Guidelines range is 100 to 120 months' imprisonment,[2] greater than the range calculated in the *Pimentel* letter, but less than the range calculated in the PSR. In the PSR, the Probation Office calculates a range of 110 to 120 months' imprisonment and recommends a sentence of 110 months.

### The Defendant's Conduct Calls for a Sentence Within the Guidelines Range

The Government submits that, on the facts of this case, a sentence within the Guidelines range of 100 to 120 months' imprisonment is appropriate because such a sentence adequately balances all of the factors that the Court is required to consider under Section 3553(a). Moreover, as is discussed further below, factors specific to this defendant and his conduct demonstrate that substantial deterrence is required to prevent the defendant from committing additional crimes in the future.

The defendant pled guilty to, on or about June 2, 2010, unlawfully possessing a firearm. Specifically, the defendant sold a HiPoint, 9 millimeter caliber rifle; a loaded ten-round magazine; and a flash suppressor to a confidential source in exchange for $800. This offense is serious, and requires a sentence that will "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(A-B).

Moreover, it is clear that substantial deterrence is warranted in this case. The instant case represents the defendant's fourteenth conviction. His contacts with the criminal justice system began when the defendant was only sixteen years old and continued until his arrest in June 2010. Some of his prior offenses were violent and resulted in substantial prison terms. For example, in 2001, the defendant pled guilty to Robbery in the Third Degree and was sentenced to 28 months' to 7 years' incarceration, followed by parole. While incarcerated, the defendant committed

---

[2] The Guidelines range for an offense level of 25 and a Criminal History Category of V is 100 to 125 months' imprisonment, but the offense of conviction in the instant case carries a statutory maximum term of imprisonment of 120 months.

Hon. Paul G. Gardephe
October 15, 2013
Page 4

several serious infractions; he also exhibited a poor adjustment to post-release supervision. The defendant also has youthful offender adjudications for Attempted Robbery in the Third Degree and Escape in the Second Degree, both in 2001, for which he was sentenced to 16 months' to 4 years' incarceration. In addition to those offenses, the defendant's contacts with the criminal justice system have been regular and consistent, demonstrating that the defendant's prior periods of incarceration have had little deterrent effect.

As the Court is aware, the defendant is also facing unrelated firearms charges in New York State court, for which the defendant was arrested on June 3, 2010, the day after he sold the HiPoint rifle to the confidential source. According to the PSR and to information obtained from the New York City Police Department ("NYPD") and the state prosecutors, the defendant menaced a victim with a firearm. In connection with that arrest, the NYPD obtained a search warrant for the defendant's apartment. Pursuant to that warrant, the NYPD seized, among other things, a loaded firearm, a bulletproof vest, and a police scanner. The NYPD also found numerous photographs, some of which depicted the defendant and others posing with firearms. Other photographs depict firearms and ski masks, items typically used to commit armed robberies. Many of the photographs contain blue bandanas, blue clothing, and hand signals typically associated with the Crips gang. On the back of one of the photographs, the defendant identifies himself as a member of the "Homicidal Guerilla Crips." (Some of these photographs are attached hereto as Exhibit A. As some of the photographs depict individuals other than the defendant, Exhibit A will be sent to the Court but not filed on ECF.) These photographs demonstrate that the defendant was frequently in possession of firearms, which he considered props to make him appear dangerous, and displayed a general disrespect for the law and respect and admiration for violent and illegal activity.

Moreover, following the defendant's June 3, 2010 arrest by the NYPD, he was incarcerated in Rikers in connection with the New York State charges. Bail was set; the conditions imposed included, among other things, that the defendant post cash. While at Rikers, the defendant's telephone calls were recorded, with his knowledge. In some of these telephone calls, the defendant proposed different ways of raising the money to post bail. One of the ideas that the defendant discussed frequently, and in detail, was the possibility of defrauding other individuals trying to post bail for their family members or friends. Specifically, the defendant suggested creating a sham business that appeared to be a bail bond company. He and his accomplices would persuade their victims—other individuals seeking to post bond for their friends and family members—to give money to the defendant's sham company, paying by PayPal. Rather than using that money as intended by the victims, the defendant would actually use it to post his own bail. In the calls, the defendant provided detailed instructions to one of his accomplices about creating, copying, and distributing flyers advertising the sham bail bond company. (Transcripts of certain of these calls are attached hereto as Exhibit B. As the transcripts contain conversations between the defendant and individuals other than the defendant, Exhibit B will be sent to the Court but not filed on ECF.) This scam demonstrates that even after

Hon. Paul G. Gardephe
October 15, 2013
Page 5

being arrested on firearms charges, the defendant contemplated committing yet another crime simply so that he could afford to post bail.

This pattern of behavior—particularly the defendant's long and regular criminal history, his infractions while incarcerated, his poor adjustment to supervision, his attitude towards firearms and the commission of violent crimes, and his plan to commit yet another offense while incarcerated—demonstrates that the defendant has not learned from any of his prior contacts with the criminal justice system and instead has continued to commit crimes and defy court orders. To deter the defendant from future unlawful conduct and to protect the public from future crimes of the defendant, a Guidelines sentence is warranted.

## Conclusion

For the reasons set forth herein, the Government submits that a sentence within the Guidelines range of 100 to 120 months' imprisonment is appropriate.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: *Jessica Lonergan*
Jessica R. Lonergan
Assistant United States Attorney
Southern District of New York
(212) 637-1038

cc: Christopher Flood, Esq. (by electronic mail and ECF)